BYRNES, Judge.
Patricia A. Thompson appeals her convictions and sentences for one count each of *475 possession with intent to distribute cocaine, marijuana, diazepam and benzphetamine in violation of LSA-R.S. 40:967, 40:966, 40:969, and 40:968 respectively. We affirm.
Just before midnight on May 16, 1989, New Orleans police officers executed a search warrant at 1835 Burgundy, Apt. 3. When the officers knocked on the door, there was no answer, but they heard noises and shouts inside the apartment. When the officers broke through a metal gate and a wooden door and entered the apartment, they found five or six people inside one large room which served as the apartment’s living room and kitchen area. The defendant Patricia Thompson was inside the apartment’s only other room, the bathroom. As the officers entered the bathroom, they heard the toilet flushing and inside the bowl they saw a few baggies containing what was later found to be cocaine. The officers also found $100 taped inside the toilet tank. In the bathtub, water was going down the drain, which contained a white powder. A search of a purse on the doorknob inside the bathroom revealed twenty baggies of cocaine, thirty dia-zepam pills, twenty-one benzphetamine pills, and $186. The officers who executed the warrant testified that Ms. Thompson admitted that the purse belonged to her, and papers in her name were inside the purse. In addition to the items listed above, the officers also found a large bag of marijuana in a chest in the main room, a bag containing ninety marijuana cigarettes on a table in the room, a large scale, and several small scales. The officers also testified that Ms. Thompson admitted that she lived in the apartment.
Patricia Thompson denied possessing any drugs. She testified she lived in the apartment with a boyfriend who had been involved in drugs, but he was imprisoned at the time of the raid. She insisted that the scales had been found in boxes, not in plain view, and she explained that her upstairs neighbor left the boxes there to be stored earlier that day while he attempted to find his roommate, who had the only key to his apartment. She related that she was taking a bath when the officers entered her apartment and that a friend was also in the bathroom with her, using the toilet, at that time. She insisted that the purse containing the drugs belonged to this friend. She also contended that the police had raided her apartment four months earlier and found no drugs at that time. On cross-examination, she identified receipts for numerous pieces of jewelry she had recently purchased, and she admitted that she was not employed. She also identified a receipt for the purchase of the same type of purse in which the drugs had been found. She admitted being in a heroin rehabilitation program in the past, and she admitted to having prior convictions for possession of marijuana and for prostitution, a second offense.
A review of the record for errors patent reveals there are none. On appeal the defendant contends that the trial court erred by allowing her to withdraw her original guilty pleas in this case. Although she originally was represented by private counsel when she entered pleas of not guilty, she withdrew these pleas and entered pleas of guilty as charged on February 1, 1991. On that date she appeared with an indigent defender. The court initially sentenced her on only two counts, the possession with the intent to distribute marijuana and “penazaca-zine”, and on these “counts” the court imposed fourteen-year sentences, suspended, and placed her on probation. An off-the-record discussion was held, after which the prosecutor noted the correct charges against the appellant in this case, but later he stated that in this case she was “charged with possession with intent to distribute cocaine, possession with intent to distribute marijuana, those are her only charges.” The court then sentenced her to fourteen years on the cocaine charge and ten years on the marijuana charge, suspended. Another off-the-record discussion was held, after which the correct charges were noted and suspended sentences of fourteen years for the cocaine charge and ten years each for the other three counts were imposed, to be served concurrently.
At a hearing on the State’s motion to correct illegal sentences held on October 24, 1991, a different indigent offender represented the defendant. The State contended that the appellant was not eligible for suspended sentences because she had a prior felony conviction for prostitution, second offense, *476 from 1984. The defendant then stated that she had served the entire five years probation, which she declared had ended in May, 1989. The court questioned: “How am I going to avoid the bill problem?” In reference to any attempt by the State to file a multiple bill against her, defense counsel moved to withdraw the appellant’s guilty pleas, noting that she entered pleas of guilty on the understanding that she would receive suspended sentences. Defense counsel stated that apparently the appellant’s counsel at the time of her pleas did not tell her that she was ineligible for probation, and as such her pleas were uninformed. The court agreed, asking the prosecutor if he also agreed. The prosecutor stated that the court should allow her to withdraw her guilty pleas, and he then agreed that this scenario probably did occur. The defendant again asked about the prior sentences. The court gave the defendant the choice of keeping the pleas and receiving five-year jail sentences or withdrawing the pleas, going to trial, and “take a chance he can send you home.” The defendant chose to withdraw her guilty pleas and the court reinstated her pleas of not guilty.
On November 21, 1991, a twelve-member jury found the defendant guilty as charged on all four counts. She was sentenced on December 4, 1991, to serve fifteen years at hard labor on the cocaine charge, ten years at hard labor on the marijuana charge, and five years for each of the diazepam and benzphetamine charges with the sentences running concurrently. Her appeal followed.
The defendant argues that the sentences which were imposed originally in connection with the guilty pleas were not illegal as alleged by the State because under the provisions of LSA-C.Cr.P. art. 893, she was eligible for probation.
LSA-C.Cr.P. art. 893, as it existed at the time the defendant entered her guilty pleas, provided in part:
A. When it appears that the best interest of the public and of the defendant will be served, the court after a first or second conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole. The court shall not suspend the sentence of a second conviction unless the court finds that such offense did not involve the use of a dangerous weapon by the defendant, the offense occurred at least five years after the date of first conviction, and the defendant was not charged with any other felony since the date of first conviction. The period of probation shall be specified and shall not be less than one year nor more than five years. The suspended sentence shall be regarded as a sentence for the purpose of granting or denying a new trial or appeal.
B. The court under the same conditions and by the same procedure as provided for above may suspend the execution or imposition of the sentence of a multiple offender who has been convicted, in the instant offense, of a violation of the Controlled Dangerous Substances Law of Louisiana [LSA-R.S. 40:961 et seq.], other than the production, manufacture, distribution, or dispensing, or possession with the intent to produce, manufacture, distribute or dispense, ..., and place the defendant on probation if he intends to participate in the program authorized by the Federal Narcotics Rehabilitation Act or other federal or state rehabilitation programs ... [Emphasis added.]
Failure to object at the time that the defendant withdrew her guilty pleas precludes consideration of this issue on appeal pursuant to LSA-C.Cr.P. art. 841. Further the term “multiple offender” under paragraph B of LSA-C.Cr.P. art. 893 refers to a defendant having a prior felony conviction, not necessarily to a defendant having been convicted as a “habitual offender” under LSA-R.S. 15:529.1. While LSA-R.S. 15:529.1 is inapplicable where more than five years have elapsed between expiration of a sentence of a previous conviction and the time of commission of the last felony for which the defendant has been convicted, the appellate court found that the five-year cleansing period would not be read by analogy into LSA-C.Cr.P. art. 893 in State v. McKethan, 459 So.2d 72 (La.App. 2 Cir. 1984). That court stated: “Article 893 signif- *477 ieantly omits the five-year cleansing period and we refuse to read such a provision into that article.” Id., 459 So.2d at 74. The legislature has indicated that a suspended sentence is appropriate only in unusual cases. State v. Page, 575 So.2d 892 (La.App. 2 Cir.1991). In State v. Jones, 492 So.2d 1261 (La.App. 4 Cir.1986), this court found that the defendant was a multiple offender without referring to LSA-R.S. 15:529.1. In that case the defendant who was convicted of possession of a concealed weapon and who had a prior felony conviction, had no right to have a suspended sentence option considered. In the present case when she testified at trial, Patricia Thompson admitted to the prior convictions of possession of marijuana and prostitution, a second offense. The record established that she was a multiple offender and therefore was not eligible for probation under LSA-C.Cr.P. art. 893(B). The defendant’s original sentences would have been illegal, and the trial court properly granted her counsel’s motion to withdraw her guilty pleas.
Accordingly, the defendant’s convictions and sentences are affirmed.

AFFIRMED.